IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATALIE R. WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-0107-D |
| VS. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Natalie Williams ("Williams") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

In November 2010 Williams filed a Title II application for a period of disability and disability insurance benefits.[1] She also filed a Title XVI application for supplemental

[1]The Commissioner states that Williams filed both applications on November 10, 2010, while Williams states that she filed her Title II application on November 12, 2012 and her Title XVI application on January 24, 2011. The ALJ stated in his decision that Williams filed her Title II application on November 10, 2010 and her Title XVI application on January 4, 2011. The precise dates on which Williams filed her applications are immaterial for purposes of this decision.

security income in January 2011. In both applications, she alleged a disability beginning January 2, 2007, due to bipolar disorder II and a learning disability. The Commissioner denied Williams' application administratively, and Williams requested a hearing. Following a hearing, the administrative law judge ("ALJ") issued an unfavorable decision. The Appeals Council denied Williams' request for review, and Williams sought judicial review.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. § 404.1520(a) (2013). At step one,[2] the ALJ determined that Williams had not engaged in substantial gainful activity since January 2, 2007, her alleged onset date. At step two, the ALJ found that Williams had severe impairments of bipolar disorder II, borderline intellectual functioning, obesity, benign hypertension, and excess lipids. At step three, the ALJ concluded that Williams' impairments failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Williams has the following residual functional capacity ("RFC"):

> the claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to frequently climbing ramps and stairs; occasionally climbing ropes, ladders, and scaffolds; and frequently balancing, stooping, kneeling, crouching, and crawling. The claimant can understand, remember, and carry out routine and repetitive 1-2-3 tasks and instructions primarily learned by verbal instruction or job demonstration. She cannot read for more than simple word recognition, nor perform mathematical tasks beyond single digit addition and subtraction. Finally, the claimant can stay on task and maintain a 40-hour

[2]Before reaching this conclusion, the ALJ found that Williams met the insured status requirements of the Act through March 31, 2007.

> workweek or equivalent schedule with incidental 1-2 reminders per week that does not constitute prompting or coaching from supervisors.

R. 15. At step four, the ALJ found that Williams could not perform her past relevant work as a bagger (medium and unskilled) and a home health aide (medium and semi-skilled). At step five, based on the vocational expert's testimony, the ALJ found that Williams was capable of performing other jobs existing in significant numbers in the national economy, such as floor waxer, laundry worker, and hand packager. Accordingly, the ALJ found that Williams was not under a disability at any time between January 2, 2007, the alleged onset date, and November 26, 2012, the date of the ALJ's decision.

Williams contends that the ALJ erred as a matter of law when he concluded that her combination of intellectual deficits, as indicated by a full scale IQ of 69 and a performance IQ of 70, in combination with her other severe impairments, failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th

Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id*. Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4) (2011). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per

curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*. Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*. The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Williams argues that the ALJ erred as a matter of law when he concluded that her impairments failed to meet or equal a listed impairment for presumptive disability under 20 C.F.R. Part 404, Subpart P, Appendix 1.

A

Williams relies on subsection C of Listing 12.05 ("Listing 12.05C"), which defines intellectual disability[3] as follows:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment

---

[3]This regulation was revised in 2013 and now refers to "intellectual disability" rather than "mental retardation." *See, e.g., Illig v. Comm'r of Soc. Sec.*, ___ Fed. Appx. ____, 2014 WL 2937036, at *2 n.7 (3d Cir. July 1, 2014) (citing Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013)). The substantive requirements of the Listing have not changed. Many of the cases cited in this memorandum opinion and order refer to the previous version of the Listing, and, as such, the court uses the terms "mental retardation" and "intellectual disability" interchangeably.

> before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. Williams contends that the ALJ erred as a matter of law when he concluded that Williams' full scale IQ score of 69 and a performance IQ of 70, in conjunction with her bipolar disorder II, obesity, hypertension, and

excess lipids, failed to satisfy the requirements of Listing 12.05C, which requires (1) a valid verbal, performance, or full scale IQ of 60 through 70 and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. The Commissioner responds that the ALJ did not err because he concluded that the IQ scores on which Williams relies overstate the degree of Williams' mental impairments, and her other physical or mental impairments—considered either individually or collectively—do not impose a significant work-related limitation of function.

B

To meet Listing 12.05, the claimant must satisfy both the diagnostic description in the introductory paragraph *and* the severity criteria of subsection A, B, C, or D. *See Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009) (per curiam). Accordingly, Williams must establish that she exhibits significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period (the requirement of the diagnostic description). And because she relies on Listing 12.05C, Williams must also prove a valid verbal, performance, or full scale IQ of 60 through 70, in addition to a physical or other mental impairment imposing an additional and significant work-related limitation of function (the pertinent severity criterion).

The ALJ found that Williams had failed to satisfy Listing 12.05C:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Dr. Cowles testified that the claimant did

> not meet or equal Listing 12.05 (as well as 12.04). Although the claimant had a full scale IQ of 69 and a performance IQ of 70, the undersigned does not find these IQ scores to be representative of her actual intellectual functioning based on her reported activities of daily living and her work activity as a home health aide[.]

R. 15. The ALJ also found:

> The claimant's overall presentation on mental status examination has been unremarkable, with both treating and non-treating sources finding the claimant to be no more than moderately impaired. Despite her low IQ score and academic achievement testing, the undersigned finds such testing to be less than accurate indications of her mental abilities, as records from [a mental health care provider] reported that she did have some college courses. Even if she is somewhat impaired in her intellectual functioning, she nevertheless retains basic reading and math skills for everyday life, such as reading the mail and the newspaper and being able to count change. The claimant's activities of daily living and work history further demonstrate that her mental impairments are not as severe as alleged. The claimant has been independent with attending to her self-care and hygiene and is able to assist in various house chores. In addition, she worked for a period of at least 15 months as a home health aide caring for her aunt. That she was able to engage in such tasks is not consistent with allegations of severely impaired concentration and an inability to follow directions.

*Id.* at 19 (citation to exhibit omitted).

The ALJ based his conclusions on the following: (1) Williams testified during the hearing that, from 2009 to 2011, she worked as a home health care aide to her aunt for three hours per day, three days per week; (2) while working as a home health care aide, Williams cooked, cleaned, assisted her aunt with bathing and getting dressed, and made sure that her aunt took her medication as prescribed; (3) Williams completed education through the

twelfth grade; (4) at the time of the hearing, Williams was helping her grandmother with household cleaning; and (5) Williams made regular visits to a health care facility every three months for medication refills.

The ALJ also relied on a consultative examination by Barbara Fletcher, Psy.D. ("Dr. Fletcher"). According to Dr. Fletcher's report, Williams reported that she could read her mail, the newspaper, and directions on food packages; that she was able to count money and make change; and that she had managed a bank account without a problem. Dr. Fletcher also noted that Williams had arrived at her appointment on time, complied with all requests made of her, was easily understood, acted respectfully, and was able to develop a good rapport with the examiner. Dr. Fletcher also observed that Williams exhibited no evidence of thought disorder or illogical thinking, and that her responses were appropriate throughout the examination. Dr. Fletcher ultimately diagnosed Williams with bipolar disorder II and provisionally diagnosed her with borderline intellectual functioning, but she did not diagnose her as intellectually disabled or mentally retarded.[4] The ALJ gave Dr. Fletcher's consultative examination substantial weight, because it was consistent with the overall treating record.

Finally, the ALJ relied on the opinion of Richard Scott Cowles, Psy.D. ("Dr. Cowles"), a non-treating psychological expert. Dr. Cowles testified that, based on his review

---

[4]A diagnosis of borderline intellectual functioning is not equivalent to a diagnosis of intellectually disabled or mentally retarded. *See, e.g.*, *Arce v. Barnhart*, 185 Fed. Appx. 437, 439 (5th Cir. 2006) (per curiam) ("As discussed above, substantial evidence supported the ALJ's conclusion that [the claimant] has borderline intelligence but is not mentally retarded.").

of the record, he did not believe that Williams' mental impairments satisfied the 12.05 listing, and that Williams was able to perform simple work up to a third grade level. The ALJ gave Dr. Cowles' testimony substantial weight because it, too, was generally consistent with the evidence of record.[5] The ALJ found that Williams was "capable of routine and repetitive 1-2-3 step tasks that are primarily learned by verbal instruction or job demonstration." R. 19. Based on these factors, as well as other evidence of record discussed in his decision, the ALJ found that Williams did not satisfy Listing 12.05C.

C

Williams challenges on several grounds the ALJ's finding that she does not satisfy Listing 12.05C.[6]

1

Williams maintains that she can satisfy Listing 12.05C because, based on testing that Dr. Fletcher administered, it is undisputed that she has a full scale IQ of 69 and a performance IQ of 70, and she has other medically determinable and severe impairments, including bipolar disorder II, obesity, benign hypertension, and excess lipids. According to

[5]Williams contends that the ALJ should not have relied on Dr. Cowles' opinion because he did not provide any rationale to support it. The court disagrees. During the hearing, Dr. Cowles described the records on which he based his opinions and explained that, after reviewing the underlying evidence of Williams' borderline intellectual functioning, he concluded that she was capable of work, but only "simple work" and "no work that required any reading or math beyond a third-grade level." R. 34.

[6]Williams does not argue that she satisfies any of the other severity criteria (subsections A, B, or D) in Listing 12.05C.

Williams, this should end the inquiry, and the ALJ should have found that she satisfied Listing 12.05C because she met both prongs: (1) a valid verbal, performance, or full scale IQ of 60 through 70, and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function. The court disagrees.

Williams does not address the ALJ's finding that the test scores on which she relies to establish the first prong of Listing 12.05C are not representative of her actual intellectual functioning. The ALJ specifically found that the test scores overstate the degree of Williams' mental impairments because they are inconsistent with her reported daily activities and past work activity.[7] The ALJ's finding is both legally permissible and factually supported. An ALJ can consider evidence of daily activities and past work activity in assessing the validity of IQ test scores. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (per curiam) ("An ALJ may make factual determinations on the validity of I.Q. tests."). And the ALJ's factual determination about the validity of Williams' IQ scores is supported by substantial evidence. The record permits the findings that Williams completed education through the twelfth grade, served as a home health care aide for her aunt, was capable of reading and doing basic math,

---

[7]Williams argues that her work history does not support the ALJ's finding because her earnings have never risen to the level of substantial gainful activity. This argument lacks force. Regardless whether her earnings have risen to the level of substantial gainful activity, her past work activity is relevant in determining whether she is disabled. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (per curiam) (holding that alleged conditions were not disabling where claimant could perform household chores like cooking, making the bed, and washing).

and helped her grandmother with household chores.[8]

Williams asserts that the ALJ doubted the validity of the IQ test scores "because the record vaguely implied that she had taken some college courses." P. Br. 17. She also criticizes the ALJ's decision on the ground that he failed during the hearing to ask her for clarification about her educational background. Neither contention is persuasive. Although there *is* evidence in the record that Williams attended college, *see* R. 223 ("2 years of college"), 273 ("2 years of college"), 474 ("some college"), it is clear that the ALJ did *not* base his decision entirely on whether Williams had completed college courses. Rather, he based his decision on a wide range of evidence, including Williams' reported daily activities and her past work activity. And, contrary to Williams' suggestion, the ALJ asked Williams questions about her education during the hearing, and she testified that she completed the twelfth grade, graduated with a diploma, and never had to repeat a grade. *See* R. 38.

Accordingly, the ALJ's finding that, despite her low IQ scores, Williams could not satisfy Listing 12.05C, is not erroneous. *See Arce v. Barnhart*, 185 Fed. Appx. 437, 438-39 (5th Cir. 2006) (per curiam) (holding that claimaint could not satisfy Listing 12.05C where claimant could travel to unfamiliar places, use public transportation, perform housecleaning

---

[8]Williams relies on *Blancas v. Astrue*, 690 F.Supp.2d 464 (W.D. Tex. 2010), but that reliance is misplaced. In *Blancas* the claimant had a full scale IQ score of 60, a verbal IQ score of 60, and a performance IQ score of 68; he could not read or count change; and a psychologist diagnosed the claimant as mentally retarded. Here, Williams' IQ scores are higher in all categories, it is undisputed that she can read and count change, and she has failed to produce any evidence that she has ever been diagnosed as intellectually disabled or mentally retarded.

tasks, use computer, and did not need help grooming or communicating); *Palomo v. Barnhart*, 154 Fed. Appx. 426, 429 (5th Cir. 2005) (per curiam) (holding that ALJ's decision was supported by substantial evidence where ALJ noted claimant's borderline intellectual functioning but concluded that level of functioning would not preclude claimant from performing unskilled work); *Bordelon v. Shalala*, 41 F.3d 661, 1994 WL 684574, at *1 (5th Cir. Nov. 15, 1994) (per curiam) (holding that ALJ's decision that IQ tests overstated claimant's degree of mental impairment supported by substantial evidence where there was evidence that claimant held several jobs and cared for his two children); *Muse*, 925 F.2d at 790 (ALJ's conclusion that IQ tests were invalid supported by substantial evidence where claimant's education, work experience, and demeanor at hearing did not indicate mental retardation).[9] That Dr. Fletcher examined Williams and administered the IQ tests, but did not diagnose her as being intellectually disabled or mentally retarded, strongly supports the ALJ's conclusion, as does the fact that Dr. Cowles opined that Williams did not satisfy Listing 12.05C. *See, e.g.*, *Robinson v. Astrue*, 271 Fed. Appx. 394, 395 (5th Cir. 2008) (per curiam) (holding that ALJ's decision was supported by substantial evidence where ALJ discussed claimant's low IQ scores but concluded that test scores overstated claimant's

[9]In *Muse* the claimant's test scores were even lower than Williams' test scores. In *Muse* the claimant, *inter alia*, had taken the Wechsler Adult Intelligence Scale test and received the following scores: a verbal IQ score of 62, a performance IQ score of 67, and a full scale IQ score of 62. *Muse*, 925 F.2d at 788. Here, Williams took the same test and received a verbal IQ score of 73, a performance IQ score of 70, and a full scale IQ score of 69.

mental impairment based in part on testimony from qualified medical expert).[10]

2

Williams also argues that her borderline intellectual functioning, coupled with her condition of bipolar disorder II, caused significant adaptive deficits and work-related limitations of functioning.[11] Williams relies on the test scores addressed above, evidence that she has been hospitalized for psychological symptoms, evidence that she scored relatively low on the Global Assessment of Functioning ("GAF") scale,[12] and her subjective statements that she experiences a variety of psychological symptoms, such as social withdrawal and depression.

None of this evidence is sufficient to disturb the Commissioner's decision. In the ALJ's decision, he reviewed Williams' treatment history and discussed at length her visits

---

[10]Because the ALJ's finding that the test scores overstated the degree of Williams' degree of mental impairment is supported by substantial evidence, the court need not resolve whether Williams produced sufficient evidence that her alleged intellectual disability initially manifested during the developmental period (i.e., prior to age 22).

[11]Williams appears to rely exclusively on her bipolar disorder II as "the physical or other mental impairment imposing an additional and significant work-related limitation of function" within the meaning of Listing 12.05C. *See* P. Br. 19-20 ("However, intellectual deficits are not her only impairment and, when considered in combination with her significant bipolar disorder, she made a prima facie case that her impairments meet or equal the requirements of Listing 12.05(c)."). Other than her contention that Listing 12.05C is satisfied merely because the ALJ determined that she had medically determinable and severe impairments other than borderline intellectual functioning, Williams does not otherwise rely on her obesity, benign hypertension, or excess lipids to support her remaining arguments.

[12]"GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" *Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (quoting *American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994)).

to various mental health care providers. The ALJ determined that "the evidence of record does not support her allegations that such impairments are disabling," R. 17, and he specifically found, *inter alia*, that "[t]he treating record shows that the claimant's symptoms have responded well to medication management, with any perceived escalation of her symptoms attributable to noncompliance," *id.* at 19. This factual finding is supported by substantial evidence. For example, the ALJ cited progress notes from a mental health care provider indicating that Williams responded favorably to her medications and was "stable." R. 18, 512. "A medical condition that can reasonably be remedied . . . by . . . medication is not disabling." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (footnote omitted).

The ALJ also considered and discussed Williams' GAF scores. But he noted that the GAF scale has no direct correlation to the severity requirements of Listing 12.05, and Williams concedes that her GAF scores varied significantly during the relevant period (ranging from 31 to 52).[13] A low GAF score does not of itself establish that Williams satisfies Listing 12.05C. *Cf. Zimmerman v. Astrue*, 288 Fed. Appx. 931, 936-37 (5th Cir. 2008) (per curiam) (holding that ALJ's conclusion about claimant's mental impairments was supported by substantial evidence despite claimant's low GAF score); *Hammond v. Barnhart*, 124 Fed. Appx. 847, 853 (5th Cir. 2005) (affirming ALJ decision where ALJ did not even address claimant's low GAF score, and noting that there was still "far more than a scintilla of evidence" justifying ALJ's ultimate conclusion).

---

[13]*See* 65 Fed. Reg. 50746, 50764-65 ("[T]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings.").

Williams' reliance on her subjective statements is likewise unavailing. The ALJ considered this evidence, but he concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." R. 19. An ALJ's findings regarding the credibility of subjective symptom testimony are entitled to considerable judicial deference. *See Beck v. Barnhart*, 205 Fed. Appx. 207, 213 (5th Cir. 2006) (per curiam); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Patton*, 697 F.2d at 592. As discussed above, the ALJ considered the record as a whole, and Williams has failed to identify any reason to disturb the ALJ's adverse credibility determination.

3

Williams contends that the ALJ erred as a matter of law by failing to "set forth a clear standard" for determining whether she exhibited deficits in adaptive functioning. The court disagrees.

"Although not expressly defined in [Listing] 12.05, adaptive functioning is generally described in Listing 12.00 as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [one's] grooming and hygiene, using telephones and directories, and using a post office.'" *Norwood v. Astrue*, 2013 WL 959937, at *6 (S.D. Miss. Feb. 22, 2013) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(C)(1)). The ALJ specifically discussed in his decision evidence concerning Williams' ability to clean, cook, and care for her grooming and hygiene needs. Moreover, the ALJ relied on a June 2007 examination by state agency medical consultants, who

concluded that Williams could understand, remember, and carry out simple instructions; make decisions; concentrate for extended periods of time; interact with others; and respond to changes. The ALJ's decision is supported by substantial evidence.[14]

4

In sum, the court concludes that the ALJ's decision is supported by substantial evidence. The ALJ considered the record as a whole and discussed his conclusions in a relatively comprehensive opinion. He acknowledged that Williams exhibited borderline intellectual functioning and bipolar disorder II, but he concluded that the record did not establish that Williams is intellectually disabled within the meaning of Listing 12.05. As he is authorized to do, the ALJ weighed conflicting evidence, relied on a consultative examination by an examining psychologist and testimony from a medical expert, and

---

[14]In *Blancas*, which the court distinguishes *supra* at note 8, the district court remanded the case to the Commissioner because the ALJ did not provide a clear standard for determining that the claimant did not satisfy the diagnostic description of Listing 12.05. *Blancas*, 690 F.Supp.2d at 483. Noting that it was a "very close case," the *Blancas* court ultimately concluded that the ALJ "appear[ed] to have utilized an ad hoc approach in determining that [the claimant] did not have deficits in adaptive functioning." *Id.* The *Blancas* court also noted, however, that "[t]he lack of a clear standard for measuring deficits in adaptive functioning is not problematic in . . . clear-cut cases, but creates difficulties in borderline cases such as this one." *Id.* at 480.

Unlike *Blancas*, this *is* a clear-cut case. In *Blancas* the claimant was diagnosed with mental retardation as a child, a consultative examiner expressly found deficits in adaptive functioning, and a medical expert concluded that the claimant satisfied the diagnostic definition of mental retardation. *Id.*; *see also id.* at 469. By contrast, in the present case, (1) Williams has not produced evidence that she has ever been diagnosed as intellectually disabled or mentally retarded; (2) a consultative examiner determined that Williams can read her mail, the newspaper, and directions on food packages, that she is able to count money and make change, and that she has managed a bank account without a problem; and (3) the medical expert concluded that she does not satisfy Listing 12.05.

determined that Williams' testimony about her symptoms was not completely credible. "Substantial evidence simply needs to be more than a mere scintilla. Not only is it less than a preponderance, the evidence can preponderate in the claimant's favor and the ALJ's decision [can] still be supported by substantial evidence." *Morton v. Astrue*, 2011 WL 2455566, at *10 (N.D. Tex. June 20, 2011) (Fitzwater, C.J.). The court holds that the ALJ's decision is supported by substantial evidence.

*     *     *

Accordingly, for the reasons explained, the Commissioner's decision is AFFIRMED.

September 16, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE